No. 23-20227

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA, EX REL BUD CONYERS

Plaintiffs,

UNITED STATES OF AMERICA,

Intervenor-Appellant/Cross-Appellee,

v.

BUD CONYERS,

Plaintiff-Appellee/Cross-Appellant.

On Appeal from the United States District Court
for the Southern District of Texas

## RESPONSE/REPLY BRIEF FOR THE UNITED STATES

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

ALAMDAR HAMDANI
*United States Attorney*

CHARLES W. SCARBOROUGH
GRAHAM W. WHITE
*Attorneys, Appellate Staff*
*Civil Division, Room 7230*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4052*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT .........................................................................................................4

    I.    Relator is not entitled to share in the settlement proceeds
        of claims he did not allege in his qui tam suit ......................................4

    II.    The government did not settle any of the claims relator
         alleged ..................................................................................................12

    III.   The district court abused its discretion in awarding relator
         the maximum percentage allowed under the statute.......................18

    IV.   The district court erred in ordering the government to
         pay relator's attorney's fees ...............................................................22

    V.    The motions panel correctly rejected relator's argument
         that the government's appeal is untimely...........................................25

CONCLUSION .....................................................................................................28

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                        **Page(s)**

*Bass v. U.S. Dep't of Agric.,*
   211 F.3d 959 (5th Cir. 2000) ............................................................... 25, 26

*Culbertson v. Berryhill,*
   139 S. Ct. 517 (2019) ........................................................................... 24

*Dixie Sand & Gravel Co. v. Tennessee Valley Auth.,*
   631 F.2d 73 (5th Cir. 1980) ................................................................ 26, 27

*Federal Recovery Servs., Inc. v. United States,*
   72 F.3d 447 (5th Cir. 1995) .................................................................... 7

*Gate Guard Servs., L.P. v. Perez,*
   792 F. 3d 554 (5th Cir. 2015) ............................................................. 23, 24

*Hamilton Plaintiffs v. Williams Plaintiffs,*
   147 F.3d 367 (5th Cir. 1998) ................................................................. 25

*Klick v. Cenikor Found.,*
   79 F. 4th 433 (5th Cir. 2023) ................................................................ 19

*Lincoln Gen. Ins. Co. v. De La Luz Garcia,*
   501 F. 3d 436 (5th Cir. 2007) ............................................................. 15, 23

*Rille v. PricewaterhouseCoopers LLP,*
   803 F.3d 368 (8th Cir. 2015) ....................................... 2, 4, 5, 6, 7, 8, 9, 13

*Roberts v. Accenture, LLP,*
   707 F.3d 1011 (8th Cir. 2013) .............................................................. 5, 6

*RSR Corp. v. International Ins. Co.,*
   612 F.3d 851 (5th Cir. 2010) ................................................................ 17

*United States v. Powell,*
   78 F. 4th 203 (5th Cir. 2023) ................................................................. 6

*United States ex rel. Adrian v. Regents of Univ. of Cal.,*
   337 F. App'x 379 (5th Cir. 2009) ........................................................... 10

*United States ex rel. Babalola v. Sharma,*
   746 F.3d 157 (5th Cir. 2014) .............................................................. 9, 10

*United States ex rel. Barajas v. United States,*
258 F.3d 1004 (9th Cir. 2001) ..................................................................8

*United States ex rel. Bledsoe v. Community Health Sys., Inc.,*
342 F.3d 634 (6th Cir. 2003) ......................... 2, 8, 11, 13, 14

*United States ex rel. Branch Consultants v. Allstate Ins. Co.,*
560 F.3d 371 (5th Cir. 2009) ........................................... 7, 11

*United States ex rel. Bryant v. Community Health Systems, Inc.,*
24 F.4th 1024 (6th Cir. 2022) ........................................ 5, 22

*United States ex rel. Colquitt v. Abbott Labs.,*
858 F.3d 365 (5th Cir. 2017) ........................................... 16

*United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.,*
495 F.3d 103 (3d. Cir. 2007) ......................................... 8, 10

*United States ex rel. Jamison v. McKesson Corp.,*
649 F.3d 322 (5th Cir. 2011) ............................................16

*United States ex rel. King v. Solvay Pharm., Inc.,*
871 F.3d 318 (5th Cir. 2017) ............................................16

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,*
149 F.3d 227 (3d Cir. 1998)................................................12

*United States ex rel. Lovell v. AthenaHealth, Inc.,*
56 F. 4th 152 (1st Cir. 2022) ........................................... 6, 7

*United States ex rel. McGuire v. Millenium Labs, Inc.,*
923 F.3d 240 (1st Cir. 2019) ........................................... 5, 7

*United States ex rel. Merena v. SmithKline Beecham Corp.,*
205 F.3d 97 (3d Cir. 2000) ..................................... 6, 7, 8, 9, 16

*United States ex rel. Schweizer v. Canon, Inc.,*
9 F.4th 269 (5th Cir. 2021) ............................................. 11

*United States ex rel. Shumann v. Astrazeneca Pharms, L.P.,*
769 F.3d 837 (3d Cir. 2014) ............................................. 6

*United States ex rel. Smith v. Gilbert Realty Co.,*
34 F. Supp. 2d 527 (E.D. Mich. 1998) ......................................... 24

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens,*
    529 U.S. 765 (2000) ................................................................... 10, 11

*Zediker v. OrthoGeorgia,*
    857 F. App'x 600 (11th Cir. 2021) ....................................... 19, 20, 21

**Statutes:**

False Claims Act (FCA):
    31 U.S.C. § 3729(a)(1) ..................................................................... 18
    31 U.S.C. § 3730(b)(1) ..................................................................... 18
    31 U.S.C. § 3730(b)(5) ....................................................................... 7
    31 U.S.C. § 3730(c)(5) ....................................................................... 8
    31 U.S.C. § 3730(d)(1) ........................................................ 3, 4, 6, 20, 22
    31 U.S.C. § 3730(e)(4) ..................................................................... 16
    31 U.S.C. § 3730(f) ....................................................................... 3, 23
    31 U.S.C. § 3730(g) ......................................................................... 24
    31 U.S.C. § 3731(c) ......................................................................... 12

28 U.S.C. § 2412(b) ............................................................................. 3

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ............................................................. 4, 25

Fed. R. App. P. 4(a)(4)(A) ................................................................ 25

Fed. R. App. P. 4(a)(4)(A)(vi) ...................................................... 25-26

**Legislative Materials:**

132 Cong. Rec. H 9388 (daily ed. Oct. 7, 1986) ................................ 9

S. Rep. No. 99-345 (1986) .................................................................. 21

**Other Authority:**

DOJ Relator's Share Guidelines, 11 False Claims Act &
    Qui Tam Q. Rev. 17 (1997) ............................................................ 10

# INTRODUCTION

Relator's attempt to recover a multi-million dollar share of a False Claims Act (FCA) settlement resolving claims he did not bring fails at every turn. Relator does not dispute that both he and the government dropped the qui tam claims he brought in this case and that those claims were never substantiated. Relator does not dispute that he played no role in litigating the separate claims that the government added to the case and later settled. Nor does relator dispute that there is no evidence in the record that he helped expose any fraud against the government.

Relator nonetheless argues on cross-appeal that the government's decision to pursue its separate claims by intervening in his qui tam suit entitles him to a 15-to-25 percent share of the entire $13.6 million settlement. In relator's view, the FCA forbids courts from determining a relator's share on a claim-by-claim basis, and the district court accordingly erred by awarding him a smaller share based on the extent to which the conduct covered by the settlement agreement purportedly overlapped with his qui tam complaint. But every court of appeals to address the issue has held that the statute limits relators to recovering a share of the proceeds of claims the relator actually brought. The notion that a relator who does nothing to expose fraud against the government can still recover millions of dollars from the public fisc solely because the government initially intervened in the relator's qui tam suit has no support in the FCA's text, purpose, or interpretative case law. This Court should therefore join its sister circuits and hold that the FCA "allows relators to recover a percentage of the

1

proceeds of the settlement of 'the claim' brought by the relators, and only that claim."
*Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 374 (8th Cir. 2015) (en banc).

Relator argues in the alternative that he is entitled to a share of the entire settlement amount because he alleged each of the kickback claims settled by the government.  He did not.  The settlement agreement resolved claims that specific employees of defendant Kellogg, Brown & Root, Inc. (KBR) took kickbacks in exchange for awarding inflated subcontracts to Kuwaiti subcontractors.  In contrast, relator's complaint alleged that after certain subcontracts were awarded, other KBR employees took kickbacks in exchange for billing the government for inoperable vehicles.  That both sets of allegations happen to involve kickbacks under the same contract between KBR and the Army does not establish that the claims are the same.  Rather, a relator seeking to recover settlement proceeds must show that he alleged "the FCA violations contemplated by the settlement agreement."  *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634, 651 (6th Cir. 2003).  Relator has failed to show that he alleged any of the FCA violations covered by the settlement agreement and he is therefore entitled to neither a share of the entire settlement, as he has argued on cross-appeal, nor the lesser amount awarded by the district court.

Even if this Court finds that relator is entitled to some share of the settlement proceeds, it should hold that the district court abused its discretion in awarding relator the maximum percentage permitted under the FCA.  The FCA authorizes a relator-share award between 15 and 25 percent of the proceeds of the settled claim

"depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). But there is no evidence in the record to substantiate relator's allegations that he contributed to the government's recovery by reporting kickback activity to the Army and KBR during his service in Iraq in 2003. Relator also concedes that he had no working partnership with the government throughout this litigation, which further underscores that the claims the government ultimately pursued and settled had nothing to do with him. The district court thus abused its discretion by awarding relator the maximum percentage allowed under the FCA.

Relator also fails to identify any provision of the FCA authorizing relator to recover attorney's fees from the government. Relator does not dispute that the FCA requires "[a]ll" of the relator's fees to "be awarded against the *defendant*," and expressly exempts the government from liability for *any* expenses incurred by a relator. 31 U.S.C. § 3730(d)(1), (f) (emphasis added). Relator nonetheless argues that an award of attorney's fees against the government is authorized under 28 U.S.C. § 2412(b), a provision of the Equal Access to Justice Act (EAJA) permitting fee awards against the government where, *inter alia*, it has acted in bad faith. But relator did not raise this argument below and the district court did not find that the government engaged in any misconduct, let alone the sort of bad faith conduct that would permit a fee award under EAJA.

3

Finally, relator's attempt to relitigate the denial of his motion to dismiss by the motions panel is unavailing. The government's appeal is timely because the 60-day window to appeal under Federal Rule of Appellate Procedure 4(a)(1)(B) ran from the date of the district court's order denying the government's motion for reconsideration. That motion was denied on March 16, 2023, and the government timely filed its notice of appeal 60 days later on May 15, 2023.

## ARGUMENT

### I.    Relator is not entitled to share in the settlement proceeds of claims he did not allege in his qui tam suit.

Relator argues on cross-appeal that the FCA entitles him to share in the proceeds of all claims settled by the government regardless of whether he alleged those claims. Relator thus contends that he is entitled to 25 percent of the entire $13.6 million settlement and that the district court erred by awarding him a smaller $1.1 million share based on the extent to which the settlement purportedly overlapped with his qui tam claims. But the False Claims Act "allows relators to recover a percentage of the proceeds of the settlement of 'the claim' brought by the relators, and only that claim." *Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 374 (8th Cir. 2015) (en banc) (quoting 31 U.S.C. § 3730(d)(1)). Relator's argument to the contrary has no support in the statute's text or history and has been rejected by every court of appeals to consider the issue.

4

**A.**  Relator is wrong that his interpretation of the FCA as allowing relators to share in the proceeds of claims they did not allege is "widely recognized in the case law."  Relator Br. 36 (Br).  We are unaware of any case standing for such a proposition and the cases relator cites expressly reject this view.  For example, relator quotes *United States ex rel. Bryant v. Community Health Systems, Inc.*, 24 F.4th 1024 (6th Cir. 2022), which states that "the FCA allows for the recovery of a share of government proceeds if the government successfully litigates or settles *a claim that the relator originally brought*."  Br. 36 (emphasis added) (quoting *Bryant*, 24 F.4th at 1030).  Relator also cites *United States ex rel. McGuire v. Millenium Laboratories, Inc.*, 923 F.3d 240 (1st Cir. 2019), which likewise states that "[a] relator seeking recovery must establish that there exists an overlap between Relator's allegations and the conduct discussed in the settlement agreement," *id.* at 252 (alteration omitted) (quoting *Rille*, 803 F.3d at 373).  These decisions are in accord with the en banc Eighth Circuit's holding in *Rille* that relators may only recover the proceeds of claims that they brought.  *Rille*, 803 F.3d at 374.[1]

---

[1] Relator asserts (at 42 n. 49) that *Rille*'s holding that relators must establish factual overlap to share in any settlement proceeds "disregarded its own precedent" from *Roberts v. Accenture, LLP*, 707 F.3d 1011 (8th Cir. 2013).  But *Roberts* did not adopt relator's view that the government's intervention in a qui tam suit automatically entitles a relator to a share of settlement proceeds.  Rather, as the en banc Eighth Circuit explained in *Rille*, the *Roberts* panel held that the relator's allegations must be "related" to the conduct settled by the government and that "a causal connection between the relator's claim and a later settlement is sufficient." *Rille*, 803 F.3d at 374 (quoting *Roberts*, 707 F.3d at 1017).  *Rille* rejected this "catalyst" theory of recovery as

*Continued on next page.*

**B.** Relator likewise errs in arguing (at 32-33) that the text of the FCA compels the conclusion that relators are entitled to share in the proceeds of claims they did not bring. Section 3730(d)(1) provides that if the Government "proceeds with an action brought by a [relator] under subsection (b)" the relator is entitled to "receive at least 15 percent . . . of the proceeds of the action or settlement of the claim." 31 U.S.C. § 3730(d)(1). Relator contends that the phrase "proceeds of the action" means the proceeds of the case as a whole, rather than the proceeds of a claim brought by the relator. But it is a "well-established interpretation of the FCA" that section 3730 uses the words "claim" and "action" interchangeably to refer to an individual claim in a multi-claim action. *United States ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 159-60 (1st Cir. 2022) (quotation marks omitted). As then-Judge Alito explained, "the draftsmanship of the [FCA] has its quirks," one of which is that "the statute is based on the model of a single-claim complaint" even though many qui tam actions now involve multiple claims. *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101 (3d Cir. 2000); *see also United States ex rel. Shumann v. Astrazeneca Pharms, L.P.*, 769 F.3d 837, 846 (3d Cir. 2014) ("[The] FCA's reference to 'action' may reasonably be read to mean 'claim' because the statute envisions a single-claim complaint[.]"). For this reason, "the relators' share of the proceeds must be based on a claim-by-

---

"not derived from the statute." *Id.* And the en banc decision in *Rille* supersedes any contrary holding or analysis in *Roberts*. *See United States v. Powell*, 78 F.4th 203, 208 (5th Cir. 2023) (noting that a court of appeals sitting en banc may overrule a prior panel decision).

claim analysis." *Merena*, 205 F.3d at 106. The most natural reading of section 3730(d)(1) is thus that it allows the relator to share in the proceeds of a claim "brought by" the relator under section 3730(b). *See Rille*, 803 F.3d at 372.

This reading is consistent with how this Court and its sister circuits construe the word "action" elsewhere in section 3730. For example, the FCA's "first-to-file rule" states than when a relator "brings an action," no other relator "may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). But when a later-filed complaint contains multiple claims, only some of which are based on the earlier-filed complaint, courts do not dismiss the entire action and instead "conduct a claim-by-claim analysis in order to determine if section 3730(b)(5) applies." *Merena*, 205 F.3d at 102; *see, e.g.*, *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 380 (5th Cir. 2009) (applying a claim-by-claim analysis and dismissing some but not all of the relator's claims under the first-to-file bar); *Millenium Labs.*, 923 F.3d at 253 (same). And while section 3730(c) allows the government to "proceed[ ] with the action" or "dismiss the action," it is well settled that the government may partially intervene to pursue certain claims in a multi-claim qui tam action. *See, e.g.*, *Federal Recovery Servs., Inc. v. United States*, 72 F.3d 447, 449 n.1 (5th Cir. 1995). Other examples abound. *See, e.g.*, *Lovell*, 56 F.4th at 159-60 (holding that "government intervention in an 'action' under § 3730(d)(1) means government intervention in an individual claim"); *Merena*, 205 F.3d at 102

(government may settle some but not all of relator's claims notwithstanding language in § 3730(c)(2) authorizing it to "settle the action").

Relator's interpretation of section 3730 is also inconsistent with the statutory scheme. When the government seeks to pursue a new FCA claim, it can either add that claim to an existing action brought by a relator, or it can pursue the new claim through an alternate remedy. If the government pursues its new claim through an alternate remedy, "the person initiating the action shall have the same rights" in the alternate proceeding "as such person would have had" if the government had proceeded with the original action. 31 U.S.C. § 3730(c)(5). This means that "the relator has a right to recover a share of the proceeds of the alternate remedy to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action." *Rille*, 803 F.3d at 373 (quoting *United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1010 (9th Cir. 2001)); *see United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3d. Cir. 2007) (same).

But a relator is not entitled to share in the government's recovery from an alternate proceeding just because the government's claim *could* have been added to the relator's qui tam suit. Instead, such a relator must establish that "there exists an[ ] overlap between [the] Relator's allegations and the conduct discussed in the settlement agreement." *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634, 651 (6th Cir. 2003). "Given the equivalence of recovery required by § 3730(c)(5) and § 3730(d)," the relator must therefore also establish factual overlap in a case where, as

8

here, the government adds its new claims to the relator's suit. *Rille*, 803 F.3d at 373; *see United States ex rel. Babalola v. Sharma*, 746 F.3d 157, 161(5th Cir. 2014) (interpreting the FCA and stating that "the statute must be read as a whole in order to ascertain the meaning of the language in context of the desire goals envisioned by Congress" (quotation marks omitted)). In short, relator's view that he is entitled to share in the proceeds from a claim he did not bring is flatly inconsistent with the claim-by-claim analysis routinely employed under the FCA's qui tam provisions.

**C.** Relator's reliance on legislative history (at 34) is likewise unavailing. Relator notes that one of the statute's drafters explained that a relator "is guaranteed a minimum of 15% of the total recovery even if that person does nothing more than file the action in federal court." *Id.* (emphasis added) (quoting 132 Cong. Rec. H 9388 (daily ed. Oct. 7, 1986)). As discussed above, however, Congress drafted the FCA "based on the model of a single-claim complaint." *Merena*, 205 F.3d at 101. The excerpted legislative history does not address a relator's right to recover settlement proceeds in a multi-claim suit when the proceeds arise from a claim not brought by the relator. That is clear from the very next sentence, which describes the "minimum of 15%" as a "finder's fee" that is "provided to develop incentives for people to bring the information forward." Br. 34 (quoting 132 Cong. Rec. H9388). A "finder's fee" depends on the relator finding something of value. But in relator's view, a relator could "find" nothing that contributed to the government's recovery and still recover from the public fisc if the government added its separate claims to the relator's suit.

9

Nothing in the legislative history suggests that Congress intended for relators to recover under such circumstances.[2]  As this Court has already observed, "[t]he statute evinces no intent to compensate relators who bring unfounded [qui tam] claims, whether the claims are legally or factually unfounded."  *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 337 F. App'x 379, 381 (5th Cir. 2009) (per curiam) (citing *Hefner*, 495 F. 3d at 112).

That some courts have described the relator's share as a "finder's fee" or a "bounty" accordingly does nothing to advance relator's argument.  Br. 35 (emphases omitted) (first citing *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000); and then citing *Sharma*, 746 F.3d at 164-67 (Dennis, J., concurring)).  While Judge Dennis's concurrence in *Sharma* indeed uses the term "bounty" to describe a relator's share in the context of an alternate remedy, it made clear that such a share depends on the relator alleging the facts that formed the basis of the government's recovery.  *Sharma*, 746 F.3d at 165 (Dennis, J., concurring) ("The purpose of § 3730(c)(5) is to ensure that a relator who has filed a valid *qui tam* complaint is not deprived of the bounty prescribed by the statute if the government

---

[2] Relator also quotes (at 37-38) similar language from the Department of Justice's (DOJ) relator share guidelines, which is based on the legislative history. *See* DOJ Relator's Share Guidelines, 11 False Claims Act & Qui Tam Q. Rev. 17, 17 (1997) ("The legislative history suggests that the 15 percent should be viewed as the minimum award—a finder's fee—and the starting point for a determination of the proper award.").  For the same reasons, that language does not advance relator's argument.

subsequently decides to seek an alternate remedy *for the same fraudulent acts*.") (alteration omitted) (emphasis added) (quotation marks omitted).  And the Supreme Court in *Stevens* merely held that a qui tam relator has Article III standing to bring an FCA claim on behalf of the United States.  *Stevens*, 529 U.S. at 774-75.  The Court explained that claims brought by a relator are assigned to the relator from the government by statute, and that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id.* at 773.  Nothing in *Stevens* supports relator's extraordinary contention that the statute assigns to the relator a claim that he did not bring in the first place.

**D.**  Relator asserts (at 43-44) in conclusory fashion that it is "unworkable" for courts to apply a factual overlap test.  But courts already apply this test in determining a relator's right to recover settlement proceeds when the government pursues an alternate remedy.  *See supra* pp. 8-9; *Bledsoe*, 342 F.3d at 651.  And this Court has approved of similar fact-bound inquiries under the FCA in other contexts.  *See, e.g.*, *United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 275 (5th Cir. 2021) (applying the FCA's public disclosure bar by, inter alia, determining whether the relator's action "is based upon . . . publicly disclosed allegations" (quotation marks omitted)); *Branch Consultants*, 560 F.3d at 377 (applying the FCA's first-to-file bar by determining whether "a later allegation states all the essential facts of a previously-filed claim" (quoting *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232 (3d Cir. 1998))).

11

Relator's reading of the relator-share provision would create practical problems of its own. The FCA, as discussed, authorizes the government to "add any additional claims with respect to which the Government contends it is entitled to relief" when it intervenes in a relator's qui tam suit. 31 U.S.C. § 3731(c). If this Court holds that a relator is automatically entitled to share in the proceeds of such additional claims regardless of whether they overlap with the relator's allegations, the government will be more likely to bring such new claims in a separate lawsuit leading to the inefficient piecemeal litigation that Congress sought to avoid in enacting section 3731(c). This Court should therefore reject relator's interpretation and adhere to the unanimous view shared by its sister circuits that a relator may only recover a share of the settlement proceeds from a claim he actually brought.

## II.     The government did not settle any of the claims relator alleged.

Relator argues in the alternative that he is entitled to 25% of the entire settlement amount because his qui tam claims overlap with the kickback claims covered by the settlement agreement. That is incorrect. There is no factual overlap between relator's claims and any of the settled claims, and relator is therefore not entitled to any share of the settlement proceeds.

**A.** Relator first asserts (at 40, 42 (quoting ROA.34930)) that the district court "made the factual finding" that the government settled relator's claims involving "kickbacks for trucks and trailers." Not so. Courts must determine whether the government settled the relator's claim by assessing whether "the conduct

contemplated in the settlement agreement . . . overlap[s] with the conduct alleged in [the] Relator's complaint." *Rille*, 803 F.3d at 373-74 (alterations in original) (quoting *Bledsoe*, 342 F.3d at 651). The district court found that the settlement agreement "does *not* explicitly include the conduct that Mr. Conyers alleged," ROA.24929 (emphasis added), and that should have ended the matter. But the court nonetheless held that the details of relator's allegations are "inconsequential" because the statute allows the relator to recover if the relator "put the government on notice . . . and arguably impelled and/or focused its investigation into [the settled] conduct." ROA.24931. The en banc Eighth Circuit rejected this interpretation of the FCA in *Rille*, explaining that the view that a relator can recover settlement proceeds if relator was "the catalyst leading to the [G]overnment's settlement" is "not derived from the statute" and is insufficient to show factual overlap. *Rille*, 803 F.3d at 374 (quotation marks omitted). And as we explained in our opening brief (at 23), there is no evidence that relator was a "catalyst" for the government's recovery in any event.

**B.** Relator further argues (at 41, 42 n.47) that each of the claims in the settlement agreement overlap with his qui tam complaint because they involved KBR employees taking kickbacks from subcontractors under KBR's contract with the Army. But a comparison of claims at such a high level of generality is insufficient to show factual overlap. The Sixth Circuit's analysis in *Bledsoe* illustrates this point. The relator in *Bledsoe* brought a qui tam FCA suit alleging that several hospitals defrauded Medicare through "upcoding"—*i.e.*, "the practice of billing Medicare for medical

13

services or equipment designated under a code that is more expensive than what a patient actually needed or was provided." *Bledsoe*, 342 F.3d at 637 n.3. The government later settled with the defendant hospitals and the relator moved for a share of the proceeds. The conduct described in the settlement agreement "pertained to Defendants' practice of submitting to Medicare . . . claims with improper diagnostically related group . . . coding" for inpatient admissions, "while Relator's complaint, on the other hand, discussed other types of improper coding," *id.* at 650, such as "upcoding of contract services and disposable equipment," *id.* at 638. The Sixth Circuit held that relator could not establish factual overlap through "broad" allegations that the defendant hospitals generally "engaged in miscoding and upcoding items billed to Medicare and Medicaid." *Id.* at 650 (quotation marks omitted). Instead, the relator had to "provide more concrete evidence" that he alleged "the FCA violations contemplated by the settlement agreement." *Id.* at 651.

Relator did not allege the FCA violations addressed by the settlement agreement. The claims in the settlement agreement concerning kickbacks for vehicles have nothing to do with the allegations in relator's qui tam complaint. The settlement agreement resolved claims that KBR employee Anthony Martin took kickbacks in exchange for awarding two inflated subcontracts for vehicles to a Kuwaiti subcontractor. ROA.24625. In contrast, relator alleged that after certain unidentified subcontracts were awarded, KBR employee Willie Dawson took kickbacks in exchange for accepting the delivery of vehicles that were "inoperable" while another

KBR employee, Rob Nuble, "charged the Army for more trucks than were really delivered to Camp Anaconda." ROA.81. And contrary to relator's arguments (at 9, 14, 24, 27), relator's complaint did not allege a "pervasive kickback scheme" that could arguably cover the kickbacks-for-subcontracts schemes settled by the government. Relator's complaint instead alleged a specific scheme in which KBR employees billed the government for vehicles that were either defective or never delivered. ROA.80-81. Relator does not dispute that those allegations were not included in the settlement agreement and were never substantiated.

Relator's argument (at 42 n. 47) that there is factual overlap between his qui tam complaint and the settled claims concerning KBR employees Stephen Seamans and Jeff Mazon is even more farfetched. The settlement agreement addressed claims that Seamans and Mazon took kickbacks in exchange for awarding subcontracts for cleaning services and fuel tankers, respectively. ROA.24624-25. Relator's complaint did not mention Seamans and Mazon. Nor did it contain any allegations regarding cleaning services or fuel tankers or any related subcontracts. Relator does not argue otherwise.

Relator could not recover a share of the proceeds from the settlement of the claims involving Mazon and Seamans even if he had alleged them. "[R]elators are not entitled to any share of the settlement attributable to claims that would have been subject to dismissal under [the FCA's public disclosure bar] prior to the government's intervention." *Merena*, 205 F.3d at 106. The public disclosure bar requires the Court

15

to dismiss a qui tam suit "based on public[ly] available information" unless "the relator is an original source of the information." *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017) (quoting *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011) (citing 31 U.S.C. § 3730(e)(4)). If the public disclosure bar applies, "it [is] [the r]elator's burden to show that they qualified under the original source exception." *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 325 (5th Cir. 2017) (per curiam).

There is no dispute that the allegations involving Seamans and Mazon were publicly disclosed before relator filed suit. By the time relator filed suit in December 2006, the government had commenced criminal proceedings against both Mazon and Seamans. *See* ROA.24429-44, 24477 (public court filings from Mazon and Seamans criminal cases predating relator's suit); Gov't Br. 4. And there is no evidence in the record that relator could have qualified as an "original source" if he had brought those claims. Relator argued below that the allegations in the complaint suffice to show that he was an original source because he was "talking about the horrors of what he experienced, personally." ROA.25036. But allegations in a complaint are not competent evidence. *See RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). And in any event, the complaint does not contain any allegations regarding Mazon and Seamans, much less that relator "experienced" their misconduct "personally." Indeed, relator could not have "experienced" the misconduct involving

16

Mazon and Seamans because it occurred before relator's service in Iraq. *See* ROA.4788-89, 25067; Gov't Br. 23.

**C.** Relator also suggests (at 16-17, 44) that the government needed its allegations to overlap with those in relator's complaint to avoid any statute of limitations defenses. Relator is mistaken. The government entered into a series of tolling agreements with KBR, pursuant to which "the Government's FCA . . . claims [were] not time-barred, to the extent those claims accrued after May 9, 2004." ROA.18546-47. The claims that KBR and the government later settled were not time-barred because KBR submitted false claims under the relevant subcontracts after that date, even though the kickback conduct that rendered those claims false occurred earlier. *See, e.g.*, ROA.18548. As relator acknowledges (at 17 n.21), the government did not rely on relator's allegations or any "relation-back" theory in opposing KBR's statute of limitations defenses.

**D.** Finally, there is no merit to relator's argument (at 44) that a factual overlap inquiry is unnecessary because the settlement agreement "released not only Government claims, but certain claims by [relator] as well." While relator does not specify which of his claims were purportedly released, he cites to a paragraph in the settlement agreement addressing relator's personal claims against KBR. *See* ROA.24629-30. Relator brought personal claims against KBR for retaliation and breach of contract arising from his alleged unlawful termination. ROA.100-02. But the settlement agreement expressly states that it does not release KBR from either

17

claim.  ROA.24629-30.  To the extent relator asserts that the settlement agreement

released KBR from the qui tam claims in his complaint, he is mistaken.  The

settlement agreement, to which relator was a signatory, expressly states that

"[n]otwithstanding . . . any other term of this Agreement," KBR is not released from

"[a]ny liability to the United States (or its agencies) for any conduct other than the

Covered Conduct."  ROA.24628.  Relator's qui tam claims are, by definition, claims

under which the defendant "is liable to the United States government."  31 U.S.C.

§ 3729(a)(1); *see* 31 U.S.C. § 3730(b)(1) (relator may bring "a civil action for a violation

of section 3729").

## III.    The district court abused its discretion in awarding relator the maximum percentage allowed under the statute.

As we explained in our opening brief (at 27-29), there is no evidence in the

record supporting the district court's primary basis for awarding relator the maximum

amount allowed under the FCA: that relator purportedly reported the relevant

allegations in his complaint to the Army in 2003.  ROA.24931.  Relator does not

dispute this point.  Despite "bear[ing] the burden of proving that [his] contribution

warrants up to 25% of the settlement," *Zediker v. OrthoGeorgia*, 857 F. App'x 600, 604

(11th Cir. 2021) (per curiam), relator provided no evidence that he filed such a report.

And the only record evidence on the issue refutes relator's shifting explanations for

his failure to do so.  Gov't Br. 23-24; *see* ROA.24973, 25752 (sworn declarations from

the Army's Criminal Investigative Division (CID) and KBR asserting that they had no

record of any reports filed by relator); *see also* ROA.25070 (declaration from then-Army CID agent refuting relator's claim that Army CID admitted it "lost" the report). The district court thus abused its discretion by awarding relator the maximum percentage allowed under the FCA. *See Klick v. Cenikor Found.*, 79 F.4th 433, 439 (5th Cir. 2023) ("A district court abuses its discretion . . . on an erroneous view of the law or on a clearly erroneous assessment of the evidence." (quotation marks omitted)).

Relator also admits that he had no working partnership with the government "[a]fter the case was unsealed, and right up to the settlement on the eve of trial." Br. 47. That is because relator had no knowledge of the government's claims, ROA.24401-02, and both relator and the government had decided not to pursue relator's claims early in discovery, ROA.3491-94. Indeed, relator did not sit for a deposition or otherwise participate in discovery, and the government did not use any information provided by relator in prosecuting the action. Gov't Br. 28-29. And contrary to relator's argument (at 47), the lack of a working partnership between relator and the government is a basis for "decreas[ing] the percentage," not increasing it. *Zediker*, 857 F. App'x at 605.

Relator, moreover, does not dispute that the "multiple meetings and phone calls" cited by the district court made no contribution to the government's recovery. ROA.24931. By the time relator first met with the government, Martin had already confessed his kickback schemes to federal investigators and entered into a

19

cooperation agreement with the government.  ROA.24487, 24512; *see* Gov't Br. 28.[3] And the information that relator provided to the government pertained to a separate kickback scheme that neither the government nor relator ultimately elected to pursue. *See Zediker*, 857 F. App'x at 606 (minimum 15 percent share warranted when relator's assistance largely pertained to "claims for which the Government had already stated it was not intervening" (quotation marks omitted)).

The remaining arguments relator advances in support of the district court's decision to award the maximum 25 percent share permitted under the FCA all lack merit.  For example, the district court did not find "that the Government had waived" any argument on the relator share amount.  Br. 46.  While the court noted that the government "did not argue for an alternative percentage, other than zero," ROA.24931, it did not hold that the government waived the issue.  Nor could it have. The FCA requires the amount to be based "upon the extent to which the person substantially contributed to the prosecution of the action," 31 U.S.C. § 3730(d)(1), and the government argued to the district court that relator failed to "offer any meaningful assistance" and explained that "Relator and his counsel lacked familiarity with the Government's 'additional claims.'"  *See* ROA.24401-02.

---

[3] Our opening brief also noted (at 28) that Martin had pleaded guilty prior to relator's initial meeting with investigators on March 22, 2007.  While Martin agreed to cooperate with the government prior to that initial meeting, *see* ROA.24512, he did not enter a guilty plea until July 13, 2007.  *See* Plea Agreement, *United States v. Martin*, No. 4:07-cr-40042-JBM-JAG (July 13, 2007).

Relator next asserts without explanation that "[t]he 25% percentage is mandated by the three 'Senate factors'" and "DOJ's own 'guidelines.'" Br. 47. Neither the "Senate factors" nor the government's guidelines mandate a maximum award under any circumstances, much less those present here. The "Senate factors" state only that courts should calculate an award amount based on "(1) the significance of the information provided to the government by the *qui tam* plaintiff, (2) the contribution of the *qui tam* plaintiff to the result, and (3) whether the information provided by the relator was previously known to the government." *Zediker*, 857 F. App'x. at 604-05 (citing S. Rep. No. 99-345, at 28 (1986)). The government's guidelines likewise list various factors that should result in an increase in the relator share amount above 15 percent, including the assistance provided by relator and relator's counsel through the proceedings. *Id.* As discussed, these factors do not support the district court's decision to award relator the maximum percentage allowed under the FCA. *See* Gov't Br. 25-30.

Relator also asserts that the district court "took note of [relator's] central importance" to the case "at length" in a ruling that "was [n]ever rebutted by the Government." Br. 18-20. But the "ruling" relator quotes is the background section of an omnibus order resolving various motions filed at the pleading stage, before both the government and relator dropped relator's claims. *See* ROA.819. The order merely summarized the allegations in the case and did not purport to credit any of them. *See* ROA.819. The district court's summary judgment opinion, on the other hand,

21

discusses at length the claims that the government ultimately pursued in the case and makes no mention of relator or his allegations apart from an initial footnote noting the date on which the qui tam suit was filed. ROA.18539 n.1.

Finally, there is no merit to relator's contention that the government's opposition to relator's motion for a share of settlement proceeds "militates strongly in favor of a 25% relator's share." Br. 48 (citing *Bryant*, 24 F.4th 1024). The case relator cites for this point, *Bryant*, did not address the factors warranting a higher relator share and instead concerned relator's right to recover attorney's fees from the defendant. *Bryant*, 24 F.4th at 1030. And in discussing the FCA's qui tam provisions, *Bryant* reiterated the proposition that formed the basis of the government's opposition to relator's share motion in the first place: that "the FCA allows for the recovery of a share of government proceeds if the government successfully litigates or settles a claim *that the relator originally brought*." *Id.* (emphasis added).

## IV.   The district court erred in ordering the government to pay relator's attorney's fees.

In our opening brief, we explained (at 30-32) that the FCA requires "[a]ll" of the relator's attorney's fees to be "awarded against *the defendant*," 31 U.S.C. § 3730(d)(1) (emphasis added), and that it expressly prohibits relators from recovering attorney's fees from the government. *See id.* § 3730(f). Relator fails to acknowledge these provisions of the FCA, which plainly prohibit a relator from recovering attorney's fees from the government in a qui tam suit. Relator instead claims that "the

Government's brief never addresses the statutory basis for this award that [relator] focused on below, which is 28 U.S.C. § 2412(b)." Br. 49. But relator did not seek attorney's fees below under section 2412(b). *See* ROA.23981-24002. The district court ordered the government to pay relator's attorney's fees *sua sponte* and did not invoke section 2412(b) in doing so. *See* ROA.24932. Relator invoked section 2412(b) for the first time in a footnote in response to the government's motion for reconsideration, *see* ROA.25027 n.23, which is insufficient to preserve the argument for appeal. *See Lincoln General Ins. Co. v. De La Luz Garcia*, 601 F. 3d 436, 442 (5th Cir. 2007) ("Generally speaking, we will not consider an issue raised for the first time in a motion for reconsideration.").

In any event, section 2412(b) does not provide a basis for ordering the government to pay relator's attorney's fees. That provision authorizes an award of attorney's fees against the government when it has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Gate Guard Servs., L.P. v. Perez*, 792 F. 3d 554, 559 (5th Cir. 2015) (quotation marks omitted). This Court has explained that "the bad faith exception is very narrow" and is not an appropriate penalty for "maintaining an aggressive litigation posture." *Id.* at 561 (quotation marks omitted). At no point did the district court find that the government engaged in any misconduct, let alone the sort of bad faith conduct that could justify a fee award under section 2412(b). Indeed, the government was not even adverse to relator until the very end of the case,

23

when relator requested a share of the proceeds from the settlement of claims he did not bring or in any way help to litigate.

Relator is also wrong that the FCA "specifically says" that the government may be ordered to pay relator's fees under section 2412(b).  Br. 52 (citing 31 U.S.C. § 3730(g)).  Section 3730(g) refers to a different provision of EAJA, section 2412(d), and states that it shall apply in determining the fees of the "prevailing *defendant*."  31 U.S.C. § 3730(g) (emphasis added).  Indeed, none of the cases cited by relator (at 52) involve an award of a relator's fees against the government under section 2412(b).  *See Culbertson v. Berryhill*, 139 S. Ct. 517, 521 (2019) (noting that the district court had awarded fees under section 2412 in a case challenging the denial of social security benefits); *Gate Guard*, 792 F.3d 554 (awarding fees under section 2412(b) to the plaintiff in a lawsuit against the Department of Labor under the Fair Labor Standards Act); *United States ex rel. Smith v. Gilbert Realty Co.*, 34 F. Supp. 2d 527, 534 (E.D. Mich. 1998) (holding that monetary penalties could be imposed against the government in the form of sanctions under Federal Rule of Civil Procedure 11).  Because no statute waives the government's sovereign immunity from attorney's fees claimed by a qui tam relator in an FCA suit, the district court clearly erred in ordering the government to pay relator's attorney's fees.

**V.    The motions panel correctly rejected relator's argument that the government's appeal is untimely.**

The motions panel correctly rejected relator's argument (at 1-2, 31-32) that the government's appeal is untimely. *See* Order (June 6, 2023) (citing *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000) (per curiam)). Under Federal Rule of Appellate Procedure 4(a)(1)(B), the government had to file its notice of appeal "within 60 days after entry of the judgment or order appealed from." However, if any party files any motion listed in Rule 4(a)(4)(A), including a motion to alter or amend the judgment under Rule 59(e), "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A).

Relator argues that the government's motion for reconsideration did not extend the deadline to file a notice of appeal because it was not a "motion to alter or amend the judgment." Br. 31. That is incorrect. While "[t]here is no motion for 'reconsideration' in the Federal Rules of Civil Procedure," this Court has held that a timely motion for reconsideration "is construed as a Rule 59(e) motion that suspends the time for filing a notice of appeal." *Bass*, 211 F.3d at 962 (citing *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998)).[4]

---

[4] Although *Bass* noted that the motion for reconsideration must be filed "within ten days" of the order being appealed, *see* 211 F.3d at 962, that case preceded the 2009 Amendments to the Federal Rules of Civil Procedure, which extended the time to file a motion for reconsideration from 10 days to 28 days. *See* Fed. R. App. P.

*Continued on next page.*

The government filed a timely motion for reconsideration of the district court's relator share order on February 21, 2023, which is construed as a Rule 59(e) motion for purposes of extending the appeal window, *see Bass*, 211 F.3d at 962. The district court entered its order denying reconsideration on March 16, 2023. ROA.25072. "[The government's] notice of appeal was therefore due sixty days from the date the court entered its order denying the motion for reconsideration, or sixty days from [March 16, 2023]." *Bass*, 211 F.3d at 962. The government's notice of appeal, filed 60 days later on May 15, 2023, was thus timely. ROA.25931.

Relator is wrong that this Court dismissed the government's appeal "under identical circumstances" in *Dixie Sand & Gravel Co. v. Tennessee Valley Authority*, 631 F.2d 73 (5th Cir. 1980). Br. 32. This Court dismissed the appeal in *Dixie Sand* because the appellant filed two motions for reconsideration—one seeking reconsideration of the judgment and another seeking reconsideration of the order denying the original motion for reconsideration—and failed to appeal within "60 days after the denial of [the] appellant's *first* motion for reconsideration." 631 F.2d at 74-75 (emphasis added). This Court explained that the deadline to appeal ran from the order denying the first motion for reconsideration rather than the second because a contrary rule would allow a vexatious litigant to "extend the time for appeal virtually

---

4(a)(4)(A)(vi) advisory committee's note to 2009 amendments. And, in any event, the government filed its motion for reconsideration within 10 days of the district court's order.

indefinitely by filing successive motions for reconsideration challenging each of the grounds seriatim." *Id.* at 75.  Like the motions panel, this Court should reject relator's contention that the government's appeal is untimely.

**CONCLUSION**

For the foregoing reasons, the district court's order awarding relator a share of the settlement proceeds and directing the government to pay relator's attorney's fees should be reversed. The Court should reject relator's argument on cross-appeal that relator's share should be enlarged to $3,419,405.25, plus attorney's fees.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

ALAMDAR HAMDANI
*United States Attorney*

CHARLES W. SCARBOROUGH

s/ GRAHAM W. WHITE
GRAHAM W. WHITE
*Attorneys, Appellate Staff*
*Civil Division, Room 7230*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4052*

October 2023

28

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Graham W. White*

Graham W. White

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 28.1(e)(2)(A) because it contains 7,065 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Graham W. White*
Graham W. White