# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
July 16, 2024
Lyle W. Cayce
Clerk

No. 23-20227

United States of America, *ex rel* Bud Conyers,

>*Plaintiffs*,

United States of America,

>*Intervenor—Appellant/Cross-Appellee*,

*versus*

Bud Conyers,

>*Plaintiff—Appellee/Cross-Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-4024

_____

Before Stewart, Duncan, and Engelhardt, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

After the United States settled several False Claims Act (FCA) claims with military contractor Kellogg Brown & Root (KBR), the estate of Bud Conyers sought a relator's share of the proceeds. The district court awarded the estate around $1.1 million. Both sides appealed. The estate argues it deserved a larger share, whereas the Government argues it deserved

No. 23-20227

nothing because the parties settled none of the FCA claims brought by Conyers. Agreeing with the Government, we reverse.

## I.

The FCA "imposes civil liability on any person who presents false or fraudulent claims for payment to the Federal Government." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 423 (2023); see 31 U.S.C. §§ 3729–33. It is "enforced not just through litigation brought by the Government itself, but also through civil *qui tam* actions that are filed by private parties, called relators, 'in the name of the Government.'" *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 653 (2015) (quoting 31 U.S.C. § 3730(b)). When a relator files suit, the Government can intervene, assuming "primary responsibility" for the case, and can add "additional claims." § 3730(c)(1); § 3731(c); *see also* § 3730(b)(4). If the Government opts not to intervene, the relator can proceed on its own. § 3730(c)(3). Either way, the relator may be entitled to a portion of the proceeds of the suit. § 3730(d)(1)–(3).

In January 2004, the Government began investigating fraud involving KBR's contracts with the U.S. Army, leading to the prosecution of three KBR employees. In 2005, Jeff Mazon was indicted for awarding an inflated fuel tanker subcontract to Kuwaiti subcontractor La Nouvelle General Trading and Contracting Company ("La Nouvelle") in exchange for kickbacks. In early 2006, Stephen Seamans pled guilty of wire fraud and money laundering for awarding La Nouvelle an inflated subcontract for cleaning services at an Army base, also in exchange for kickbacks. And in late 2006, Anthony Martin confessed to awarding an inflated truck and trailer

subcontract to another company, First Kuwaiti Trading Company, again in exchange for kickbacks.[1]

In December 2006, Bud Conyers filed a *qui tam* suit against KBR under the FCA. Conyers had been a KBR truck driver in Kuwait and Iraq from May to December 2003. Conyers's suit, however, alleged wrongdoing different from that engaged in by Mazon, Seamans, and Martin. First, Conyers claimed "KBR used mortuary trailers to deliver consumable supplies to United States soldiers" in Iraq. Second, he claimed two KBR employees, Willie Dawson and Rob Nuble, "accepted kickbacks" in exchange for defective or nonexistent trucks. Finally, he claimed KBR managers in Kuwait "billed prostitutes to the United States."[2]

In 2013, the Government intervened in Conyers's suit and filed its own complaint in 2014. The Government's complaint included allegations about two of the schemes alleged by Conyers (mortuary trailers and defective trucks) and added separate claims related to Mazon, Seamans, and Martin. *See* § 3731(c) (permitting the Government "to add any additional claims with respect to which the Government contends it is entitled to relief"). During discovery, however, the Government notified the parties and the district court that it was no longer pursuing Conyers's original claims. At that point, Conyers could have continued litigating those claims himself. *See* § 3730(c)(3) ("If the Government elects not to proceed with the action,

---

[1] Martin later pled guilty of violating the Anti-Kickback Act. *See United States v. Martin*, 4:07-cr-40042 (C.D. Ill. July 13, 2007), Doc. No. 3.

[2] In addition to his FCA claims, Conyers brought several personal claims against KBR related to his allegedly unlawful termination.

No. 23-20227

the person who initiated the action shall have the right to conduct the action."). But he did not.

The parties settled just before trial. In a document signed by representatives of the United States, KBR, and Conyers's estate,[3] KBR agreed to pay the United States $13,677,621 for a release of certain claims involving specified "Covered Conduct." As relevant here, the Covered Conduct included only the wrongdoing by Mazon, Seamans, and Martin, not the separate wrongdoing alleged in Conyers's complaint. Claims related to "any conduct other than the Covered Conduct" giving rise to "liability to the United States (or its agencies)" were "specifically reserved and . . . not released."[4]

Conyers then moved for a relator's share of the settlement, arguing he was automatically entitled to a share because of the Government's intervention in his suit. Conyers sought twenty-five percent of the total proceeds, or about $3.5 million. The Government opposed the motion, arguing Conyers was entitled to nothing because none of Conyers's original claims had been settled.

The district court granted Conyers's motion in part. It recognized that "the [C]overed [C]onduct d[id] not explicitly include the conduct that Mr. Conyers alleged." Nonetheless, relying on an Eighth Circuit decision, the court asked whether "there exists an overlap between" Conyers's allegations and the conduct covered by the settlement. *See Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 373 (8th Cir. 2015) (en banc). The court found "sufficient

---

[3] Conyers passed away on February 17, 2018. For simplicity, we will refer to the relator throughout this opinion as "Conyers."

[4] The agreement also expressly reserved Conyers's right to pursue the personal claims he had brought against KBR.

factual overlap," but only with respect to Martin. Both Conyers's allegations and Martin's wrongdoing, the court stated, involved "allegations of kickbacks for trucks and trailers."

True, Conyers's allegations did not involve Martin himself—they addressed different kickback schemes involving different persons, Dawson and Nuble. But the district court believed such "details" were "inconsequential because equity aids the statute in ensuring that a relator does not lose the favor of the statute based on the government's determination of how and on what basis it will proceed, either to trial or in settling the case." The court reasoned that Conyers "put the government on notice" of fraud in trucking contracts "and arguably impelled and/or focused its investigation into Mr. Martin's conduct." The court did not award Conyers any part of the settlement of the Mazon and Seamans claims, however. Dividing the three claims (*i.e.*, Martin, Mazon, and Seamans) equally, the court awarded Conyers over $1.1 million. It also *sua sponte* ordered the Government to pay Conyers's "reasonable attorney's fees."

Each side unsuccessfully moved for reconsideration. Both sides then appealed. A motions panel of our court denied Conyers's motion to dismiss the Government's appeal as untimely.[5]

---

[5] Conyers re-urges this argument before our panel. Although the motions panel does not bind us, *see Newby v. Enron Corp.*, 443 F.3d 416, 419 (5th Cir. 2006), we agree that the Government's appeal was timely. Conyers argues the Government failed to appeal within 60 days of the district court's initial order. *See* Fed. R. App. P. 4(a)(1)(B). But, as the motions panel explained, that is not the relevant date. The Government timely appealed within 60 days of the order denying reconsideration. *See* Fed. R. App. P. 4(a)(4)(A) (providing "the time to file an appeal runs for all parties from the entry of the order disposing of" a motion for reconsideration, if filed).

## II.

"We review pure questions of law and mixed questions of law and fact *de novo*." *GIC Servs., L.L.C. v. Freightplus USA, Inc.*, 866 F.3d 649, 666 (5th Cir. 2017).

## III.

On appeal, the Government argues the district court erred by:

(1) awarding Conyers a share of a settled "claim" factually unrelated to Conyers's own claims, *see* § 3730(d)(1);

(2) awarding the maximum share of that claim (25%), without any showing that Conyers "substantially contributed" to its prosecution, *ibid.*; and

(3) awarding Conyers attorney's fees from the Government instead of the defendant. *Cf. ibid.* ("All such expenses, [attorney's] fees, and costs shall be awarded against the defendant.").

We agree with the Government on the first issue and so need not reach the second and third.

## A.

The parties' dispute centers on this FCA provision, entitled "Award to qui tam plaintiff":

> If the Government proceeds with an action brought by a person under subsection (b) [*i.e.*, a relator], *such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim*, depending upon the extent to which the person substantially contributed to the prosecution of the action.

*Ibid.* (emphasis added). According to the Government, this provision lets a relator recover only from a settlement of his own "claim," not from a settlement of factually unrelated claims added by the Government. The Government relies principally on the Eighth Circuit's *en banc* decision in

*Rille*. *See Rille*, 803 F.3d at 372 ("The relators' right to recovery is limited to a share of the settlement of *the claim that they brought*." (emphasis added)). Conyers, by contrast, argues the provision lets a relator recover from the total settlement, including proceeds attributable to the settlement of other claims.

To umpire this disagreement, we start with § 3730(d)(1)'s text. It promises relators a cut of "the proceeds of the . . . settlement of *the claim*" (emphasis added). Which claim, you ask? The provision tells us: a claim in "an action brought by a person under subsection (b)," *ibid.*, which is the subsection permitting a relator to "bring a civil action for a violation of section 3729." § 3730(b). And section 3729, in turn, sets out the grounds for FCA liability. *See, e.g.*, § 3729(a)(1)(A) (making a person liable if he "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"). Putting those pieces together, a "claim" under § 3730(d)(1) is one brought by a relator to enforce § 3729. *See Rille*, 803 F.3d at 372 (agreeing "the claim" under § 3730(d)(1) is one "'brought by' the relator in 'an action' that he initiates"). So, the text supports the Government's argument that a relator can share in the settlement only of his own "claim."

Context also supports the Government. The next subsection, § 3730(d)(2), gives a relator a larger share for "settling the claim" if the Government opts not to proceed. The phrase in (d)(2)—"settling the claim"—could refer only to the claim initially brought by the relator. We see no reason to read the nearly identical phrase in (d)(1)—"settlement of the claim"—any differently. *See Rille*, 803 F.3d at 372 (same); *see also* A. Scalia & B. Garner, Reading Law: The Interpretation of

7

Legal Texts 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text.").

The FCA's next section also supports the Government. Section 3731(c) addresses how the Government can add "additional claims," as it did here. By filing its own complaint or amending the relator's complaint, the Government can "clarify or add detail to *the claims* in which the Government is intervening" or "add any *additional claims* with respect to which the Government contends it is entitled to relief." *Ibid.* (emphasis added). So, § 3731(c) addresses both a relator's own "claims" and the Government's "additional claims." By contrast, § 3730(d)(1) addresses only "the claim" brought by a relator under § 3730(b). We cannot amend that phrase to include "claims added by the Government." Only Congress can do so.

Conyers advances no plausible alternative reading of "the claim" in § 3730(d)(1).[6] He focuses instead on the nearby phrase "proceeds of the action." *See id.* § 3730(d)(1) (entitling relator to a share "of the proceeds of the action or settlement of the claim"). That phrase, he argues, means that a relator may share in the total settlement proceeds, even from the settlement

---

[6] In a footnote in his reply brief, Conyers suggests that "claim" in § 3730(d)(1) refers not to a relator's FCA action, but instead to the underlying "false claim" for which recovery is sought. Conyers forfeited this argument by first raising it in his reply brief. *See Alejos-Perez v. Garland*, 93 F.4th 800, 807 (5th Cir. 2024). The argument fails anyway. Conyers relies on the definition of "claim" in § 3729(b)(2), but that definition is expressly limited to § 3729 and does not apply to § 3730. *See* § 3729(b) (defining words "[f]or purposes of this section"). Besides, § 3729 uses "claim" in a different sense than § 3730. In § 3729, the word refers to the wrongdoing that gives rise to a defendant's FCA liability. *See, e.g.*, § 3729(a)(1)(A) (creating liability if "any person . . . knowingly presents . . . a false or fraudulent *claim* for payment or approval" (emphasis added)). By contrast, § 3730 uses the word to refer to an "action" a relator brings to vindicate a violation of § 3729. *See* § 3730(b)(1) ("A person may bring a civil action for a violation of section 3729 for the person and for the United States Government."); *see also* § 3730(e)(4)(A) (referring to "an action or claim under this section").

of claims the relator never brought. We disagree. Conyers's argument would red-line the phrase like this: "the proceeds of the action ~~or settlement of the claim~~." § 3730(d)(1); *see Rille*, 803 F.3d at 372 ("If proceeds of a settlement were covered by the first object concerning 'proceeds of the action,' then the second object concerning settlement of the claim would be superfluous."). That is no way to read a statute. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).[7]

Conyers's view also clashes with other parts of the FCA. For instance, instead of teaming up with the relator, the Government can pursue claims through an "alternate remedy," including a separate settlement. *See* § 3730(c)(5); *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 649 (6th Cir. 2003). In that event, the relator receives the share he "would have had" if the Government had intervened under § 3730(d)(1). § 3730(c)(5); *see Rille*, 803 F.3d at 373. Courts applying this provision permit the relator to recover only insofar as the settled claim "overlaps" with the relator's claim. *See Bledsoe*, 342 F.3d at 650–51; *Rille*, 803 F.3d at 373. Conyers's view would bring these two paths into conflict. If the Government

---

[7] Conyers's argument also assumes that the "proceeds of the action" necessarily includes the proceeds of *every* claim in that action. That is by no means clear from the FCA's text. As the Government points out, the FCA frequently uses the terms "action" and "claim" "interchangeably," since "the statute is based on the model of a single-claim complaint." *United States ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 159–60 (1st Cir. 2022); *see also United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101 (3d Cir. 2000) (Alito, J.) (discussing this statutory "quirk"). Furthermore, even a relator's share of the "proceeds of the action" depends on the "extent to which [he] substantially contributed to the prosecution of the action," suggesting the relator may not be entitled to share in the proceeds of every claim in a multi-claim action. § 3730(d)(1). In any event, we need not decide these questions because this case involves a settlement only.

No. 23-20227

intervened under § 3730(d)(1) and added non-overlapping claims, Conyers would award relators a share of the entire settlement. *See Rille*, 803 F.3d at 373 ("Given the equivalence of recovery required by § 3730(c)(5) and § 3730(d), it follows that the relator also has no right to a share if the government adds the non-overlapping claim to the original action after intervening."). We decline to create this "unwarranted disparit[y]" between FCA provisions that are meant to work in harmony. *Ibid.*[8]

Finally, Conyers's argument fights against the FCA's purposes. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute[.]"). When the Government intervenes, the statute calibrates a relator's share according to how much he contributed to the suit. *See* § 3730(d)(1) (awarding relator fifteen to twenty-five percent, "depending upon the extent to which the [relator] substantially contributed to the prosecution of the action"). Yet Conyers would let relators share in settlements of claims they never brought. *See Rille*, 803 F.3d at 373 ("It . . . would be inconsistent with the purposes of the Act to permit a relator automatically to receive a share of the proceeds when the relator might have had nothing to do with the government's recovery on a particular claim that was added after the government's intervention."). What's more,

---

[8] Conyers's view also sits uneasily with the FCA's "first-to-file" rule. Under that rule, once one relator "brings an action," another relator cannot "intervene or bring a related action based on the facts underlying the pending action." § 3730(b)(5). To apply the rule, courts—including ours—conduct a "claim-by-claim analysis." *See, e.g., United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378–80 (5th Cir. 2009); *Merena*, 205 F.3d at 102; *United States v. Millenium Lab'ys, Inc.*, 923 F.3d 240 (1st Cir. 2019). That is, courts consider each claim individually, separating genuinely new claims from recycled ones. *Merena*, 205 F.3d at 102; *see also Branch Consultants*, 560 F.3d at 378–80 (proceeding claim-by-claim and dismissing only some as barred by first-to-file rule). If a relator's right to proceed with an FCA suit is determined on a claim-by-claim basis, that suggests his right to recover should be, too.

the FCA gives relators a greater share when the Government does *not* intervene. *See* § 3730(d)(2) (awarding relator twenty-five to thirty percent of proceeds "[i]f the Government does not proceed with an action under this section"). Yet, paradoxically, Conyers would give relators a bigger payday if the Government *does* intervene and settles new claims in addition to a relator's. "It is hard to see why Congress might have wanted the fortuity of government intervention" to increase a relator's recovery, contrary to the purpose shown on the face of the statute. *Merena*, 205 F.3d at 105; *see also Biden v. Nebraska*, 143 S. Ct. 2355, 2379 (2023) (Barrett, J., concurring) (statutory "[c]ontext . . . includes common sense").

* * *

In sum, the text and context of § 3731(d)(1), as well as the larger purposes of the FCA, all support the Government's view that a relator is entitled to a share only of a settled "claim" he brought, not additional claims added by the Government.

**B.**

The district court seemed to concede that the settled "claims" were distinct from the "claims" brought by Conyers. Yet the court went on to consider whether those claims "factually overlap," such that Conyers should be entitled to some share in the settlement. In doing so, the court applied a test adopted by some circuits for assessing whether a settled "claim" is sufficiently similar to a relator's "claim" under § 3730(d)(1).

As stated by the *en banc* Eighth Circuit: "[A] relator seeking recovery must establish that there exists an overlap between [his] allegations and the conduct discussed in the settlement agreement." *Rille*, 803 F.3d at 373 (cleaned up) (quoting *Bledsoe*, 342 F.3d at 651). This test "ensure[s] that the claim for which recovery is sought is one that the relator [him]self actually brought to the government's attention." *United States ex rel. Kennedy v. Novo*

*A/S*, 5 F.4th 47, 57–58 (D.C. Cir. 2021). At the same time, it prevents the government from "depriv[ing] the relator of his right to recover simply by recasting the same or similar factual allegations in a new claim or by pursuing the substance of the relator's claim in an alternate proceeding." *Rille*, 803 F.3d at 374.

Our court has not adopted this "factual overlap" test for § 3730(d)(1) settlements. We need not consider whether to do so in this case. That is because the facts of the settled claims and the facts of Conyers's own claims do not "overlap" in any relevant way.

Recall that the settlement agreement described the "Covered Conduct" as wrongdoing by KBR employees Mazon, Seamans, and Martin. Specifically, it alleged that Mazon and Seamans accepted kickbacks for awarding inflated fuel tanker and cleaning services subcontracts. And it alleged that Martin did the same with respect to a truck and trailer subcontract. The settlement agreement expressly reserved the Government's right to pursue any other FCA claims against KBR.

Conyers's complaint, however, contains no mention of Mazon, Seamans, or Martin. And, as noted, it alleged entirely different wrongdoing. First, it claimed KBR improperly used mortuary trailers to deliver supplies. Second, it alleged KBR employees Dawson and Nuble took kickbacks for paying for defective or nonexistent trucks. Third, it claimed KBR employees billed the United States for prostitutes. These allegations had nothing to do with any wrongdoing by Mazon, Seamans, or Martin.

The upshot is that the Covered Conduct does not overlap with any of Conyers's allegations. The district court correctly concluded as much with respect to Conyers's claims about mortuary trailers and prostitutes. But it erred by finding that Conyers's allegations involving Dawson and Nuble overlapped with Martin. Yes, at a conceptual level, both claims happen to

involve trucks and kickbacks. But the similarities stop there. The claims involve neither the same kickback schemes nor the same KBR employees. The district court conceded as much: "the covered conduct does not explicitly include the conduct that Mr. Conyers alleged."

Nonetheless, the district court dismissed such "details" as "inconsequential." We disagree. Those details are the whole point. A court performs the overlap analysis to discern whether the Government has settled what are in essence the *relator's* claims.[9] That necessarily involves comparing the facts of particular claims. *See, e.g.*, *Bledsoe*, 342 F.3d at 651 (deeming allegations of general Medicare miscoding "too broad to support a factual finding of overlap" with settled claim involving "diagnostically related group" miscoding, specifically). Viewed in this proper light, Conyers' allegations do not overlap with any the misconduct described in the settlement agreement. *Ibid.* Said another way, the settlement agreement did not settle Conyers' claims—to the contrary, it expressly reserved the Government's right to pursue them.

The district court also suggested Conyers should recover because he "arguably" spurred the investigation into Martin's misconduct. That finding lacks any record support. The district court accepted Conyers's assertion that he first presented his allegations to the Government in 2003, despite only suing in 2006. Conyers insists he emailed the Army's Criminal Investigation Division ("CID") in 2003, alerting it to the wrongdoing eventually alleged in Conyers's complaint. Conyers has no record of this email, however. An

---

[9] *See Novo A/S*, 5 F.4th at 57–58 (the overlap test "ensure[s] that the claim for which recovery is sought is one that the relator [him]self actually brought to the government's attention"); *Rille*, 803 F.3d at 374 (in overlap analysis, court must consider whether the settled claim can "fairly be characterized" as the relator's claim).

Army CID special agent, meanwhile, submitted a declaration stating there is no record of it in the Army CID's internal database, either.

But even assuming the record supported the notion that Conyers "spurred" the investigation into Martin, that would still not entitle Conyers to a relator's share. That is because, once again, a "relator's right to recovery [under § 3730(d)(1)] is limited to a share of the settlement of the claim *that [he] brought*." *Rille*, 803 F.3d at 372 (emphasis added). By its terms, § 3730(d)(1) does not entitle the relator to recover from new claims the Government brings after discovering additional wrongdoing—even if the relator "impelled" the government's investigation. The Eighth Circuit correctly rejected this "catalyst" theory as contrary to the statutory text. *Id.* at 374 ("Whatever the merit of this theory as a policy matter, it is not derived from the statute."). We do, too.

Accordingly, assuming *arguendo* that an "overlap" analysis applies to § 3730(d)(1), the district court erred in finding that the settled claims overlap with Conyers's own claims.[10]

---

[10] For the same reasons, we reject Conyers's arguments on cross-appeal that he was entitled to a larger relator's share than the district court awarded him.

No. 23-20227

In sum, Conyers is not entitled to any share of the settlement proceeds.[11]

REVERSED.

---

[11] Because the district court erred on the merits, the court also erred in awarding Conyers expenses and attorney's fees. *See Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1425 (5th Cir. 1997). The Government independently argues that the court's fee order is wrong because the FCA specifically precludes a fee award against the Government and, additionally, does not waive sovereign immunity. *See* §§ 3730(d)(1) ("All such expenses, fees, and costs shall be awarded *against the defendant*." (emphasis added)); 3730(f) ("The Government is not liable for expenses which a person incurs in bringing an action under this section."); *see also, e.g.*, *Barco v. Witte*, 65 F.4th 782, 784 (5th Cir. 2023) (to recover attorney's fees against the Government, waiver of sovereign immunity must be "express" and "unequivocal"). Because we side with the Government on the merits and reverse the fee award for that reason, we need not reach those issues.